**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

J. LLOYD INTERNATIONAL, INC.,

    Plaintiff,

vs.

THE TESTOR CORPORATION,

    Defendant.

No. 08-CV-134-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . *2*

*IV.*   *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*     *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . *4*
    *A.*    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.*    *Mr. Bubbles* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *C.*    *Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *1.*     *"Scope of Work"* . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *2.*     *Equipment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *3.*     *"Purchase Orders"* . . . . . . . . . . . . . . . . . . . . . . . *6*
        *4.*     *Warranty* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *5.*     *Duration* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *6.*     *Choice of law* . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *D.*    *Production of Mr. Bubbles* . . . . . . . . . . . . . . . . . . . . . . . *7*

*VI.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *A.*    *Breach of Warranty* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *B.*    *Breach of Contract* . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
    *C.*    *"Failure to [Maintain] Tools and Equipment"* . . . . . . . . . *13*
    *D.*    *"Failure to Pay for Tools"* . . . . . . . . . . . . . . . . . . . . . . . *15*

*VII.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

## I. INTRODUCTION

The matter before the court is Defendant Testor Corporation's "Motion for Summary Judgment" ("Motion") (docket no. 18).

## II. PROCEDURAL BACKGROUND

On October 27, 2008, Plaintiff J. Lloyd International, Inc. filed a Complaint (docket no. 2). In the Complaint, Plaintiff asserts claims for "Breach of Warranty," "Breach of Contract," "Failure to [Maintain] Tools and Equipment" and "Failure to Pay for Tools." Complaint at 2-3.[1] On December 8, 2008, Defendant filed an Answer (docket no. 5) in which it denied the substance of the Complaint. On November 18, 2009, Defendant filed an Amended Answer (docket no. 17) to assert additional affirmative defenses.

On December 1, 2009, Defendant filed the Motion. On December 31, 2009, Plaintiff filed a Resistance (docket no. 22). On January 7, 2010, Plaintiff filed a "Motion to Amend Complaint to Conform to the Evidence" ("Motion to Amend") (docket no. 24). On January 11, 2010, Defendant filed a Reply (docket no. 27) in support of the Motion. On January 12, 2010, Defendant filed a Resistance (docket no. 28) to the Motion to Amend. On January 13, 2010, United States Magistrate Judge Jon S. Scoles entered an Order (docket no. 29) denying Plaintiff's Motion to Amend.

Neither side requests oral argument on the Motion. The Motion is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over this case because complete diversity exists among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in

---

[1] Plaintiff's allegations are not consecutively numbered by paragraph. For example, there are three paragraphs numbered "2" on page 3 of the Complaint. For convenience, the court simply refers to page numbers in the Complaint.

controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States"). Plaintiff is a citizen of Iowa. Defendant is a citizen of Illinois. The court is satisfied that subject matter jurisdiction exists.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative

burden to go beyond the pleadings and by depositions, affidavits, or otherwise, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the facts in the light most favorable to Plaintiff and affording it all reasonable inferences, the undisputed facts are as follows:

### A. *Players*

Plaintiff is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. Plaintiff "is in the business of contracting to manufacture, distribute and sell toys and similar products throughout the United States and the world." Complaint at 1. Jody Lloyd Keener is Plaintiff's owner and President. Defendant is a corporation engaged in manufacturing. Defendant's principal place of business is in Rockford, Illinois.

### B. *Mr. Bubbles*

"Mr. Bubbles" is a line of bubble-blowing products. In 2005, Plaintiff purchased the Mr. Bubbles product line at an auction. As part of the purchase, Plaintiff acquired Mr. Bubbles merchandise and the equipment necessary to produce Mr. Bubbles bubble solution, plastic bottles and various Mr. Bubbles accessories.

### C. *Agreement*

On January 17, 2006, Plaintiff and Defendant entered into an "Exclusive Manufacturing Agreement" ("Agreement") for the production of Mr. Bubbles products.

Defendant's Appendix ("Def. App'x") (docket no. 18-3), at 5. The Agreement provided that "[Defendant] [would] provide worldwide manufacturing services for [Plaintiff] of all products in the Mr. Bubbles line, including, but not limited to, bubble-blowing toys and bubble-forming liquid, along with the Tootsietoy bubble accessories." *Id.*

### 1. *"Scope of Work"*

Section 1.1 of the Agreement, entitled "Scope of Work," summarized the parties' obligations under the Agreement:

> During the term of and subject to this Agreement, [Defendant] shall manufacture, configure and test, and [Plaintiff] shall purchase from [Defendant], and [Defendant] shall sell to [Plaintiff], such quantities of units of the products described . . . above as [Plaintiff] may order from time-to-time, at a price mutually agreed upon by the parties. Each Product shall be manufactured, configured and tested according to [Plaintiff's] specifications for such Product, which are or will be (prior to or at the time of order) agreed to, in writing, by [Plaintiff] and [Defendant] (the "Specifications"). [Defendant] will produce the Products exclusively for [Plaintiff] and will not utilize the Equipment described in Section 1.2 to manufacture any products for any other company.

*Id.*

### 2. *Equipment*

Section 1.2 of the Agreement, entitled "Bailment of Equipment" provided that Plaintiff "offered, and [Defendant] accepted possession of equipment owned by [Plaintiff] which is to be used to manufacture the products[.]" *Id.* The Agreement stated that the equipment was delivered in good condition and that Defendant agreed to "set up" the equipment at its own expense. *Id.* The parties agreed that Defendant would be responsible "for any loss of Equipment after its receipt thereof and for ensuring that appropriate physical controls of such components are in place and properly administered." *Id.*

The Agreement obligated Defendant to account for all of the Equipment "specified

5

in Exhibit A[2] and any additional equipment which may be bailed to [Defendant] from [Plaintiff]." *Id*. If any part of the bailed equipment was "damaged, lost or destroyed in the manufacturing, configuration or testing process, [Defendant] [would] be responsible, at [Plaintiff's] election, for replacing such Equipment at its own expense or paying [Plaintiff] an amount for such component to be agreed upon by [Plaintiff] and [Defendant]." *Id*.

### 3. *"Purchase Orders"*

Section 2.1 of the Agreement provided that "[p]urchase orders will set forth additional price and delivery terms." *Id*. The parties were to "mutually agree to six-months terms of fixed pricing." *Id*. During these terms, the parties agreed that "the manufacturing rate [would be] guaranteed and [would] not fluctuate, regardless of changes in the cost of materials, labor, or natural resources." *Id*.

### 4. *Warranty*

Section 3.0 of the Agreement, entitled "Warranty," provided that Defendant "warrant[ed] to [Plaintiff] that each of the Products manufactured, configured or tested by [Defendant] have been manufactured, configured and tested in conformance with the Specifications set forth by [Plaintiff] and be free from defects in workmanship under normal use and service for a period of one-hundred eighty (180) days after shipment by [Defendant]." *Id*. at 5-6.

### 5. *Duration*

The Agreement was to "last as long as the parties [could] mutually agree on the price and terms set forth in the purchase orders." *Id*. at 6. If the parties were unable to agree on the price and terms of a purchase order, the Agreement would terminate. In the event of termination, Plaintiff "reserve[d] the right to remove the 'Equipment' set forth

---

[2] "Exhibit A" is not attached to the copies of the Agreement submitted by either party.

Exhibit A" and Defendant agreed to, "at [its] expense, load the Equipment on trucks for [Plaintiff] to transfer to another facility without undue delay." *Id.*

### 6. *Choice of law*

The Agreement provided that it would be "governed by and construed in accordance with the laws of Iowa." *Id.*

### D. Production of Mr. Bubbles

Pursuant to the Agreement, Defendant manufactured Mr. Bubbles solution for some time. Defendant packaged the solution in bottles that it obtained from a third party vendor. At some point, Plaintiff received a shipment of Mr. Bubbles products that Defendant had manufactured and packaged. While this shipment was in storage, "the bottles collapsed on each other and leaked." Plaintiff's Statement of Material Facts (docket no. 22-3), ¶ 16. Plaintiff's President, Mr. Keener, believed that the bottles collapsed because "the plastic was substandard or . . . there was a serious problem with the product inside." Plaintiff's Appendix ("Pl. App'x") (docket no. 22-5), at 7. Plaintiff later sold the Mr. Bubbles product line.

## VI. ANALYSIS

In the Motion, Defendant asks the court to grant summary judgment in its favor and dismiss all of Plaintiff's claims. Plaintiff resists the Motion in its entirety.

### A. Breach of Warranty

Plaintiff alleges that it "ordered and received from the Defendant approximately one million bottles of all sizes of Mr. Bubbles fluid that were defective and leaked fluid due to improper packaging and bottles supplied by the Defendant." Complaint at 2. Plaintiff alleges that "[t]he bottles and packaging were not in conformity with the specifications set forth by [Plaintiff] and were defective causing a substantial financial loss to the Plaintiff." *Id.*

In the Agreement, Defendant warranted that the products would be "manufactured,

configured and tested in conformance with the Specifications set forth by [Plaintiff.]" Def. App'x at 5-6. Defendant argues that Plaintiff fails to set forth any evidence of the "specifications" by which the products were to be judged or that Plaintiff "set forth" any specifications at all. Defendant contends that Plaintiff "may be able to prove that [Defendant] gave an express warranty, but it cannot prove that any products supplied under the Agreement failed to materially comply with that warranty." Defendant's Brief ("Def. Brief") (docket no. 18-1), at 15.

The court construes Plaintiff's claim as a breach of express warranty claim. *See* Iowa Code § 554.2313(1)(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."). Plaintiff bears the burden to prove the existence and terms of the warranty, breach, proximate cause and damages. *See Etchen v. Holiday Rambler Corp.*, 574 N.W.2d 355, 358-59 (Iowa Ct. App. 1997) (stating that the burden is on plaintiff to prove elements of breach of express warranty claim); *see also Oggi Trattoria and Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340 (Ill. App. Ct. 2007) (stating that, in breach of express warranty action, "the burden of proof is on the plaintiff to show by a preponderance of the evidence the terms of the warranty"); *Sikora v. Vanderploeg*, 212 S.W.3d 277, 286 (Tenn. Ct. App. 2006) ("A person seeking to prove a breach of warranty has the dual burden of proving the pertinent terms of the warranty and the fact that those terms were breached."); 67A Am. Jur. 2d Sales § 1130 ("[T]he plaintiff must prove the existence of the warranties alleged, breach thereof, and the fact that such breach proximately caused the damages sustained.").

During discovery, Defendant asked Plaintiff to "[i]dentify the 'specifications' that are referenced in . . . the Breach of Warranty section of [the] Complaint." Def. App'x at 25. Plaintiff first responded: "This answer will be supplemented. See documents

8

produced." *Id.* Plaintiff did not produce a document containing the "specifications" referenced in the Agreement. Plaintiff later provided this supplemental answer:

> Specifications are called for in the [Agreement] between [Defendant] and [Plaintiff]. The actual specifications are the "secret" formula given to [Defendant] to produce the fluid for Mr. Bubbles bottles. This formula calls for low phosphate water to be used. The reason being high phosphate water promotes contamination by bacteria of the fluid which could result in serious illness to the user.
>
> In addition, [Defendant] has stated they destroyed certain bottles that were contaminated; however, they have never proven that to [Plaintiff].
>
> Additional documents will be supplemented.

*Id.* at 42. Plaintiff has not produced the "secret" formula it referred to in its supplemental answer or any other "specifications" referenced by the Agreement.

Plaintiff argues that Defendant's former President, Ranga Iyenga, was with Plaintiff's President, Mr. Keener, when Mr. Keener bought Mr. Bubbles at the auction. Plaintiff contends that Iyenga "took possession of the specifications at the time [Plaintiff] acquired it at auction." Plaintiff's Brief in Support of Resistance ("Pl. Brief") (docket no. 22-1), at 17. Plaintiff submits that "[Defendant] could not have produced the product if it did not have in its possession the specifications to manufacture the product." *Id.*

Plaintiff's argument ignores the plain language of the Agreement. The Agreement provided that the products would be "manufactured, configured and tested according to [*Plaintiff's*] specifications . . . which *are or will be (prior to or at the time of order) agreed to*, in writing, by [Plaintiff] and [Defendant][.]" Def. App'x at 5 (emphasis added). Further, the "Warranty" section provided that the products would be "manufactured, configured and tested in conformance with the [s]pecifications *set forth by* [*Plaintiff*][.]" *Id.* at 5-6 (emphasis added). The parties executed the Agreement in January of 2006. Thus, Plaintiff's argument that Defendant already had in its possession, since some time

9

in 2005, the sole copy of the Mr. Bubbles "specifications," is undermined by the Agreement's terms that the specifications would be agreed to by the parties "prior to or at the time of order" and that the specifications would be "set forth by [Plaintiff][.]" *Id*. Stated another way, the Agreement speaks entirely in terms of Plaintiff providing the specifications at a future date. It contains no reference to specifications already in Defendant's possession.

This contradiction is further highlighted by Plaintiff's discovery responses regarding the alleged specifications. As discussed above, Plaintiff's first response was simply that its answer would be supplemented. Plaintiff's supplemental answer contained a vague reference to a "secret" formula. Neither of these answers mentioned the possibility that Defendant had in its possession the sole copy of the specifications referred to in the Agreement. These facts, coupled with Plaintiff's inability to articulate, much less produce, the specifications that Defendant allegedly breached, defeat Plaintiff's breach of warranty claim. In short, Plaintiff has not produced the specifications and the Agreement undermines the assertion that Defendant is in possession of the sole copy. Without any evidence as to what the specifications were, Plaintiff cannot meet its burden to demonstrate either the terms of the warranty or that a breach occurred. Accordingly, the court shall grant the Motion to the extent it seeks dismissal of Plaintiff's breach of warranty claim.

### B. Breach of Contract

In the Complaint, Plaintiff alleges that Defendant breached the Agreement by selling, as its own, products "manufactured for the Plaintiff without the consent of the Plaintiff." Complaint at 3. Specifically, Plaintiff alleges that its products are all "copyrighted and trademarked" and that Defendant violated "the Lanham Act 15 U.S.C. [§§] 1114-27" by selling Mr. Bubbles products to buyers other than Plaintiff. *Id*. Defendant argues that it sought information regarding this claim during discovery and that Plaintiff failed to provide anything other than to state that "Defendant sold our product and

we have no way of knowing to whom and at what price." Def. App'x at 43.

In its Resistance, Plaintiff does not address its allegation that Defendant breached the Agreement by selling Mr. Bubbles products to third parties. Rather, Plaintiff, for the first time, argues that its breach of contract claim is based on Defendant's alleged failure to test the product or maintain insurance on the Mr. Bubbles product line.[3] *See* Pl. Brief at 21 ("On the issues of lack of testing and lack of insurance, the Plaintiff has shown that it has a prima facie case for [b]reach of [c]ontract."). Defendant argues that the court should not allow Plaintiff to now "rely on breach of contract claims that it did not plead[.]" Reply at 6. The court agrees.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this standard is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 994 (8th Cir. 2002) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). After Defendant moved for summary judgment on the breach of contract claim alleged in the Complaint, it would be unfair to now allow Plaintiff to base that claim on entirely different facts and theories. *See N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) ("[W]hile we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment."); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Tr.*, 558 F.3d 731, 735 (8th Cir. 2009) (rejecting plaintiff's attempts to "expand his claims in his brief" by asserting facts not raised in the complaint). Accordingly, Plaintiff's breach of contract claim is confined to the allegation raised in the Complaint—that Defendant breached the Agreement by selling Mr. Bubbles products to

---

[3] The court notes that these arguments are largely the same as those raised in Plaintiff's breach of warranty claim.

third parties.

To succeed on its breach of contract claim, Plaintiff must prove the following elements:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). As noted, Plaintiff does not address this alleged breach in its Resistance and sets forth no evidence of Defendant's alleged sales of Mr. Bubbles products to a third party. In fact, Plaintiff's Statement of Material Facts does not contain a single reference to sales Defendant allegedly made to third parties.[4] Plaintiff offers no evidence as to when the purported sales occurred, the products Defendant sold or who allegedly bought the products. The court finds that Plaintiff has failed to establish a prima facie case on its breach of contract claim. Simply put, Plaintiff cannot show that a breach ever occurred, much less that Defendant breached the Agreement "in some *particular* way[.]" *Id.* (emphasis added). Accordingly, the court shall grant the Motion to the extent it seeks

---

[4] The court recognizes that Plaintiff states that "[a]t some point after [Defendant] stopped making the Mr. Bubbles product, they used [Plaintiff's] tooling and equipment to make some other products." Pl. Statement of Facts at ¶ 17. To the extent this statement can be interpreted to relate to Plaintiff's breach of contract claim, Plaintiff fails to set forth sufficient evidence to support a finding that Defendant breached the Agreement by making sales to a third party. The only evidence offered in support of this statement is the Affidavit of Jody Keener, in which Mr. Keener states that he "later learned that [certain products] were eventually sold by [Defendant] to another company." Pl. App'x at 8. This is insufficient to overcome summary judgment. *See Bacon v. Hennepin County Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) ("A properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the [non-moving party] must substantiate allegations with sufficient probative evidence that would permit a finding in [their] favor.") (citations and quotation marks omitted).

dismissal of Plaintiff's breach of contract claim.[5]

### C. *"Failure to [Maintain] Tools and Equipment"*

Plaintiff alleges that, "[p]ursuant to the [Agreement] . . . Plaintiff maintains ownership of the tools furnished for [Defendant] to perform the manufacturing pursuant to the [Agreeement]." Complaint at 3. Plaintiff alleges that, contrary to the terms of the Agreement, Defendant has "failed to maintain the tools and has failed to return the tools at the request of Plaintiff." *Id*.

This claim is clearly premised on equipment that Plaintiff gave to Defendant pursuant to the Agreement. *See* Complaint at 3 ("Pursuant to the [Agreement] . . . Plaintiff maintains ownership of the tools furnished for [Defendant] to perform the manufacturing pursuant to the [Agreement]."). The Agreement's only reference to equipment is its "Bailment of Equipment" provision. Def. App'x at 5. The Agreement provided that Defendant "accepted possession of equipment owned by [Plaintiff] which is to be used to manufacture the products . . . for [Plaintiff]." *Id*. The Agreement provided that the equipment subject to the bailment is "set forth in Exhibit A." *Id*. Exhibit A is not attached to the Agreement. Plaintiff did not produce Exhibit A or explain its content. In short, the equipment subject to the Agreement's bailment provision has never been identified.

During discovery, Defendant asked Plaintiff to "[i]temize and describe in detail all of the tools that are referenced in . . . the Failure to Maintain Tools and Equipment section of [the] Complaint." Def. App'x at 27. Plaintiff responded as follows:

---

[5] To the extent that Defendant may have sold Mr. Bubbles products to a third party, the evidence shows that Plaintiff consented to these sales. Plaintiff's counsel wrote to Defendant's President, Charles Leichtweis, on April 15, 2009, and acknowledged that Defendant was "marketing the Mr. Bubbles product in order to sell off the inventory." Def. App'x at 62. The letter stated that "[Plaintiff] consents to the sales provided, of course, that you hold [Plaintiff] harmless on the products and that you waive any right to recovery on any loss on the materials." *Id*.

> As of this date, the Defendant has not returned the tools.
>
> Mr. Bubbles tooling for the following products:
>
>> 4 oz Mr. Bubbles
>> 8 oz Mr. Bubbles
>> 16 oz Mr. Bubbles
>> 32 oz Mr. Bubbles
>> 64 oz Mr. Bubbles
>> 100 oz Mr. Bubbles
>
> Several wand tools
>
> Pan tray tools
>
> Plus list of tooling not received in trade
>
> Also, [D]efendant permitted other contractors to use tools. Failed to deliver tools to [P]laintiff at request of [P]laintiff.

*Id.* Defendant also asked Plaintiff to "identify each communication in which [Plaintiff] requested [Defendant] to return the tools to [Plaintiff]." *Id.* at 28. Plaintiff responded:

> I asked them to return the tooling and they refused. They want to hold out to try to settle other things before talking about tools. Their idea of settling is to walk away and leave me unpaid with nothing.
>
> See documents produced.

*Id.* Defendant argues that it "did not manufacture bottles for the Mr. Bubbles product, but, instead, purchased those bottles from a vendor specified by [Plaintiff]." Def. Brief at 19. Defendant contends that it "has no knowledge as to how, or when, the tooling used to manufacture the bottles was delivered to that vendor." *Id.* Accordingly, Defendant argues that it "has no control over that tooling and has no ability to return the tooling to [Plaintiff], or to refuse to do so." *Id.*

In its Resistance, Plaintiff acknowledges that "the tooling and equipment for filling the bottles, which was physically located at Testor, was eventually turned over to the company that acquired Mr. Bubbles." Pl. Brief at 21. However, Plaintiff argues that "the

14

remaining tooling and equipment bought at the auction by [Plaintiff] and turned over to the possession and control of Ranga Iyenga immediately thereafter has never been accounted for." *Id.*

Thus, although the Complaint plainly refers only to equipment that Defendant took possession of under the Agreement, Plaintiff now argues that Defendant's former President, Ranga Iyenga, "immediately" took possession of certain "tooling and equipment" Plaintiff bought at the 2005 auction. Pl. Brief at 21. Plaintiff also offers a "list" of this equipment in a document entitled "Assignee's Return of Bid Sale."[6] Pl. App'x at 184. Plaintiff does not argue that this list is the "Exhibit A" referenced in the Agreement. Further, Plaintiff fails to set forth evidence that Defendant ever took possession of the listed items.[7] In short, Plaintiff offers no evidence and cites no authority that would impose any legal responsibility upon Defendant for the items referenced in this list. Accordingly, the court shall grant the Motion to the extent it seeks dismissal of Plaintiff's "Failure to [Maintain] Tools and Equipment Claim."

### D. *"Failure to Pay for Tools"*

In the Complaint, Plaintiff alleges that "Defendant ordered tools to be manufactured by [Plaintiff] for [Defendant] in the sum of $1,445,000 and [Plaintiff] produced the tools

---

[6] The court notes that Plaintiff did not mention this "list" in its answers to Defendant's interrogatories on this claim. Further, Plaintiff did not provide the list to Defendant until December 21, 2009—approximately seven weeks after the close of discovery and three weeks after Defendant filed the Motion.

[7] In support of its contention that Iyenga took possession of these items after the auction, Plaintiff cites the Keener Affidavit. However, Keener states only that Iyenga took possession of the "*specifications* for manufacturing the product and the bottles"—not that he took possession of any equipment. Pl. App'x at 5 (emphasis added). The only reference to equipment in the Keener Affidavit is equipment that Defendant allegedly possessed pursuant to the Agreement's bailment provision. As previously noted, Plaintiff fails to identify what tools and/or equipment Defendant took possession of under the Agreement.

15

and delivered the tools, but [Defendant] refuses to pay the $1,445,000 debt owed to Plaintiff." Complaint at 3.

During discovery, Defendant asked Plaintiff to "[i]temize and describe in detail all of the tools that are referenced in . . . the Failure to Pay for Tools section of [the] Complaint." Def. App'x at 45. Plaintiff's initial answer was "[s]ee invoices supplied and documents produced." *Id.* Plaintiff later supplemented this answer with the following:

> All tools for the manufacture of the bottles for the 4 oz. bottles, the 16 oz. bottles, the 32 oz. bottles, the 64 oz. bottles, the 100 oz. bottles, and the 128 oz. bottles have not been returned to the Plaintiff as required. The Defendant has failed to pay for these tools.

*Id.* Thus, based on the Complaint and Plaintiff's discovery responses, this claim appears to be based on tools and equipment related to the production of bottles for Mr. Bubbles products.

Defendant again argues that it did not manufacture any bottles for Mr. Bubbles product and that the bottles were produced by a third-party vendor specified by Plaintiff. Accordingly, Defendant contends that it has no control over any tools and "does not even know who owns the tooling or who has possession of that tooling." Def. Brief at 19. Defendant submits that Plaintiff has failed to identify what tooling Defendant allegedly has and sets forth no evidence that Defendant took possession of the tools at issue.

On January 7, 2010, more than one month after Defendant filed the Motion, Plaintiff filed the Motion to Amend. In the Motion to Amend, Plaintiff sought to add the words "and merchandise" to the last claim of the Complaint "so that the last claim reads: 'Defendant's Failure to Pay for Tools and Merchandise[.]'" Motion to Amend at 1. Plaintiff also sought to insert the following paragraph into its "Failure to Pay for Tools" claim:

> The Defendant ordered certain merchandise to be manufactured by the Plaintiff for the Defendant and the

16

>     Defendant failed to pay for the merchandise.

*Id.*

On January 13, 2010, United States Magistrate Judge Jon S. Scoles denied the Motion to Amend. Judge Scoles found that Defendant would be prejudiced by the amendment because, "[u]nderstandably, [Defendant] ha[d] not previously sought any discovery regarding these new allegations, and the discovery deadline expired more than two months prior to [Plaintiff] filing its [M]otion to [A]mend." Order at 5. Judge Scoles also noted that Defendant "filed a motion for summary judgment based on the allegations contained in the [C]omplaint, and the deadline for filing dispositive motions expired one month prior to [Plaintiff's] [Motion to Amend] being filed." *Id.* Judge Scoles concluded that Defendant "should not be forced to proceed to trial on brand new allegations without any discovery or opportunity to challenge those claims by way of summary judgment." *Id.*

It is clear from the Resistance that the claim Plaintiff sought to add pertains to "tooling associated with Purchase Orders placed by [Defendant] for Hemi and Harley model scale engines." Pl. Brief at 22. Plaintiff alleges that Defendant placed orders for various scale engines and then "cancelled the orders without notice to [Plaintiff]." *Id.* at 22. In light of Judge Scoles's denial of the Motion to Amend, the court finds that the instant Motion should be granted as to Plaintiff's claims for "failure to pay for tools." Plaintiff cannot assert claims that were not raised in the Complaint in an effort to avoid summary judgment. *N. States Power Co.*, 358 F.3d at 1057; *see also Satcher*, 558 F.3d at 735 (rejecting plaintiff's attempts to "expand his claims in his brief" by asserting facts not raised in the complaint).

The only allegation raised in the Complaint, and therefore before the court in the instant Motion, relates to certain tools that Defendant allegedly ordered but for which it refused to pay. Plaintiff does not address this claim in its Resistance. In fact, the only

issues discussed in Section D.II. of the Resistance, entitled "Failure to Pay for Tools," are the scale engines. Pl. Brief at 22. Accordingly, the court shall grant the Motion to the extent it seeks dismissal of Plaintiff's claims for "Failure to Pay for Tools."[8]

### VII.  CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED THAT**:

(1)    The Motion (docket no. 18) is **GRANTED**; and

(2)    The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Testor Corporation and to **CLOSE THIS CASE**.

**DATED** this 17th day of February, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[8] The court also notes that, aside from the scale engines, Plaintiff offers no evidence as to any tools Defendant allegedly ordered but for which it failed to pay.